## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

```
LISA REED and CINDY              )
DIGIANNANTONIO, on behalf of     )
themselves and all others        )
similarly situated,              )
                                 )
         Plaintiffs,             )
                                 )
    v.                           )   No. 06 C 3337
                                 )
ADVOCATE HEALTH CARE, et al.,    )
                                 )
         Defendants.             )
-----------------------------------
CYNTHIA DIGIANNANTONIO, on behalf )
of herself and all others        )
similarly situated,              )
                                 )
         Plaintiff,              )
                                 )
    v.                           )   No. 06 C 3569
                                 )
EVANSTON NORTHWESTERN HEALTHCARE,)
et al.,                          )
                                 )
         Defendants.             )
```

### MEMORANDUM OPINION

Before the court is the motion of defendant University of Chicago Hospitals for summary judgment based on the nonstatutory labor exemption. For the reasons explained below, the motion is denied.

## BACKGROUND

These two antitrust cases were consolidated for all purposes in October 2006. Plaintiffs are registered nurses ("RNs") who allege that defendants, who operate several hospitals in the Chicago area,[1] have for a number of years conspired to depress the wages of their RN employees and that in furtherance of their conspiracy, agreed to regularly exchange detailed and non-public information about the compensation each is paying or will pay to its RN employees. According to plaintiffs, this conspiracy has had the effect of depressing compensation for hospital RNs in the Chicago area despite a national nursing shortage. Plaintiffs seek to represent a class of "[a]ll persons employed by any defendant or co-conspirator to work in a hospital in the Chicago area as an RN at any time from June 20, 2002 until the present." (Third Amended Complaint, 06 C 3337, at 6 ¶ 17.)

The Third Amended Complaint contains two claims: Count I alleges a conspiracy to depress wages, and Count II alleges a conspiracy to exchange compensation information, both in violation of § 1 of the Sherman Act. The relief sought by plaintiffs consists of compensatory damages, treble damages pursuant to 15 U.S.C. § 15(a), interest, reasonable attorney's fees, and costs.

---

[1] Defendants are Advocate Health Care, Children's Memorial Hospital, Evanston Northwestern Healthcare, Michael Reese Medical Center Corporation ("Michael Reese"), Doctors Community Healthcare Corporation ("DCHC"), Resurrection Health Care, and University of Chicago Hospitals. At plaintiffs' request, defendants Michael Reese and DCHC were dismissed with prejudice from one of the cases, 06 C 3569.

The University of Chicago Hospitals ("UCH") now moves for summary judgment.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

UCH argues that it is entitled to summary judgment on plaintiffs' claims because since 1969, the wages, benefits, and all other terms and conditions of employment of its RNs have been

determined by a series of collective bargaining agreements between UCH and the Illinois Nurses Association (the "INA"), and therefore the nonstatutory labor exemption to the federal antitrust laws bars plaintiffs' claims against UCH.

A brief history of the labor exemptions is as follows:

> Following passage of the Sherman Act in 1890, the courts found labor to be a commodity or article of commerce under the Sherman Act, and applied the Act to invalidate the collective bargaining agreements achieved by labor unions. In response, Congress sought to specifically exempt labor union activity by enacting sections 6 and 20 of the Clayton Act. Passage of the Clayton Act, however, failed to achieve this end, for the courts continued to apply the Sherman Act to union activities. Congress, therefore, enacted the Norris-LaGuardia Act, which sought to exempt labor activities from the application of various statutes. The Clayton and Norris-LaGuardia Acts combined to provide a comprehensive exemption from antitrust liability for union activity.
> In cases decided since the enactment of the Norris-LaGuardia Act, courts have defined the parameters of the labor antitrust exemption. As noted by the Supreme Court in Connell Construction Co. v. Plumbers & Steamfitters Local 100, 421 U.S. 616, 621-22, 95 S. Ct. 1830, 1834-35, 44 L. Ed. 2d 418 (1975), this has resulted in two distinct exemptions to the antitrust laws-a statutory exemption based on various sections of the Clayton and Norris-LaGuardia Acts, and a nonstatutory exemption based on an "accommodation between the congressional policy favoring collective bargaining under the [National Labor Relations Act] and the congressional policy favoring free competition in business markets." Id. at 622, 95 S. Ct. at 1835.

Mid-America Reg'l Bargaining Ass'n v. Will County Carpenters Dist. Council, 675 F.2d 881, 884 (7th Cir. 1982) (most citations omitted). Because the statutory exemption applies only to certain activities of employees and labor unions, see Connell, 421 U.S. at

621-22, UCH is relying on the nonstatutory exemption, which applies to certain concerted activity among and between unions and employers, see <u>Clarett v. National Football League</u>, 369 F.3d 124, 130 (2d Cir. 2004). The nonstatutory exemption "exists not only to prevent the courts from usurping the [National Labor Relations Board ("NLRB")]'s function of determining, in the area of industrial conflict, what is or is not a 'reasonable practice,' but also to allow meaningful collective bargaining to take place by protecting some restraints on competition imposed through the bargaining process from antitrust scrutiny." <u>Clarett</u>, 369 F.3d at 131 (internal quotation marks omitted).

UCH maintains that because the wages its pays its RNs are the result of a collective bargaining agreement ("CBA"), the nonstatutory exemption makes the labor laws exclusive and antitrust-related determinations "inappropriate." (UCH's Mem. in Supp. of Mot. at 5.) UCH cites a handful of cases applying the exemption in a different factual context, where all of the employees of all of the conspiring employers were represented by a union for purposes of collective bargaining, but argues that this is a "distinction without a difference." (<u>Id.</u> at 7.)

UCH further contends that the question of the legitimacy of its actions is one that is squarely within the province of the NLRB. In UCH's view, if it is not immune from antitrust scrutiny "on the issue of how it gathers and evaluates its competitors'

information in preparing for negotiations with the INA, the NLRB's responsibility for policing the collective bargaining process will be effectively usurped." (Id. at 13 (internal quotation marks omitted).)

Plaintiffs respond that because they do not challenge UCH's collective bargaining activities or agreements with the INA but rather certain agreements and collusion among UCH and various non-unionized hospitals, the nonstatutory exemption is inapplicable. Plaintiffs point out that their complaint does not allege that UCH violated the antitrust laws by virtue of its CBA with the INA, any other agreements with the INA, or any conduct growing out of the CBA, nor does the complaint request any relief relating to the CBA, such as a reformation of its terms. (Indeed, the complaint does not contain any reference whatsoever to the CBA.) Plaintiffs also assert that a determination by the NLRB of whether UCH had bargained in good faith with the INA would be irrelevant to the issue of whether UCH had participated in a conspiracy to depress nurse wages.

We agree with plaintiffs that the nonstatutory labor exemption does not apply here. None of the authorities cited by UCH stand for the proposition that an employer is immune from suit under the antitrust laws merely because it happens to be a party to a CBA, particularly a CBA to which none of its alleged co-conspirator employers is a party. Plaintiffs are correct that the cases cited

by UCH, such as Clarett, 369 F.3d 124, and Brown v. Pro Football, Inc., 518 U.S. 231 (1996), stand for a different proposition--that where a group of employers negotiates collectively with a union representing all of the group's employees, some employer-union and employer-employer agreements in restraint of trade are entitled to the nonstatutory exemption because such agreements are necessary to facilitate collective bargaining. In contrast, here we have alleged multi-employer conduct occurring outside the context of any collective bargaining scenario.[2]

In support of their arguments, plaintiffs cite the transcript of an oral opinion in Unger v. Albany Medical Center, No. 06-CV-765-TJM-DRH (N.D.N.Y. Dec. 11, 2006) (McAvoy, J.).[3] Unger is much like the instant case in that it involves claims that certain hospitals in a particular metropolitan area allegedly agreed to

---

[2] UCH also relies on In re Detroit Auto Dealers Ass'n, Inc., 955 F.2d 457 (6th Cir. 1992), where the Sixth Circuit affirmed in large part and remanded in limited part the ruling of the Federal Trade Commission ("FTC") that auto dealers who had agreed amongst themselves to be closed on weekends were not entitled to the nonstatutory labor exemption. Because Detroit Auto Dealers is a peculiar and highly fact-specific case, and very different from the instant case (especially considering that it involved multi-employer bargaining), we do not find it of much assistance here. In any event, the core holding of Detroit Auto Dealers actually supports *plaintiffs*' position: the Sixth Circuit agreed with the FTC that the nonstatutory labor exemption did not apply because the process whereby the auto dealers jointly fixed their hours of operation was not a direct product of collective bargaining or of arm's length dealing with employees. (The twist, which UCH argues supports its position, is that the Sixth Circuit also partially remanded the case to the FTC with regard to a few unionized auto dealers that had entered into a CBA regulating their hours. Like Judge McAvoy in the Unger case, see infra, we are unpersuaded that our fact situation is similar or that the Sixth Circuit's rationale for the limited remand applies here.)

[3] Judge McAvoy's Order of January 6, 2007, at 2, states that "the Motion for Summary Judgment of Defendant Ellis Hospital is denied for the reasons stated on the record on December 11, 2006 and in accordance with the Court's rulings that day."

share non-public information about nurses' salaries and to refrain from competing with each other in setting those salaries. Like UCH, one of the hospitals in the Unger case, Ellis Hospital, moved for summary judgment based on the nonstatutory labor exemption. Also like UCH, Ellis relied on the exemption even though it was the only one of the alleged co-conspirator hospitals that had a CBA. Judge McAvoy denied Ellis's motion for summary judgment, stating in part as follows:

> There is little doubt that the collective bargaining agreements between Ellis and the nurses union fall within the scope of the nonstatutory anti-trust exemption. Indeed, the collective bargaining agreements between Ellis and its nurses are precisely the type of conduct the labor laws seek to protect.
> The problem is that the complaint alleges conduct that goes beyond the collective bargaining process between Ellis and the nurses union. The complaint alleges concerted activity between Ellis and other entities; that is, other hospitals that were not parties to the bargaining with the nurses union. . . .
> . . .
> Here, there is no evidence before the Court that sharing nonpublic compensation information with other hospitals was part of the give-and-take of the negotiation process. Without any evidence that sharing such information was necessary to the collective bargaining process, it cannot be said that Ellis' activities fall[] within the nonstatutory labor exemption.
> . . .
> Although there is undisputed evidence in the record that Ellis has entered into a collective bargaining agreement with the nurses union and that such agreements cover the wages to be paid those nurses, defendant has failed to demonstrate its entitlement to summary judgment by demonstrating that an absence of fact question whether the wages contained in the CBA were imposed by the union rather than by collective agreement with and among other hospitals in the area.
> . . .

If this case had involved multi-employer bargaining, the exemption would likely apply. . . . Under such a scenario, the sharing of information between hospitals likely would be part of multi-employer bargaining with the union. In this case, however, there is but one unionized employer--Ellis. Any agreement between Ellis and any other hospitals do[es] not appear to be part of the collective bargaining process. It is possible, as Ellis suggests in its memorandum of law, that it merely acquired wage data from other area hospitals to assist in and as part of its negotiations with the union, but such evidence is not now before the Court.[4] Without such evidence, it is difficult to conclude as a matter of law that to make the collective bargaining process work, Ellis was required to share data with or obtain data from other area hospitals who were not bargaining with the nurses union.

There is no evidence in the record that any sharing of wage information between Ellis and other hospitals who were not bargaining with the nurses union [was] the result of bona fide arms length bargaining. . . . Moreover, there may be evidence that any sharing of information was in combination with groups; that is, other hospitals unrelated to any negotiations between Ellis and the nurses union. If so, this would put Ellis' conduct outside of the exemption.
. . .
The complaint in this case does not allege any illegal restraints on the trade in the collective bargaining agreement between Ellis and the nurses union. Rather, the complaint alleges . . . a wage-fixing conspiracy between Ellis and the other hospitals that has had the effect of suppressing wages in the Albany market. While wages certainly are within the scope of traditional mandatory subjects of collective bargaining, wage fixing among competitors outside of the collective bargaining process is not in furtherance of the goals that are protected by the national labor laws. . . .

The Court understands the close relationship between the wages in [defendant's] collective bargaining agreement with the nurses union and any discussion Ellis may have had regarding compensation with other hospitals and the temptation to conclude that its conduct is, therefore, exempt from anti-trust scrutiny. In this regard, Ellis maintains that because its wages are the

---

[4] Nor is such evidence before this court.

>result of the negotiated collective bargaining process, it cannot be part of a[n] anti-trust conspiracy. It could well be, however, that Ellis negotiated its wages with the union and then engaged in compensation sharing with other hospitals to ensure that those other hospitals keep their wages down, thereby providing less competition with Ellis in hiring nurses. Other such possibilities also may exist. Simply stated, Ellis cannot use its collective bargaining agreement with the nurses union to insulate any anti-competitive activity it may have engaged in outside of and separate from the collective bargaining process with the nurses union.
>    . . . Ellis, which bargains with the nurses union, cannot seek to impose a certain wage scale on other bargaining units; that is, the nonunion hospitals in the market place, by negotiating wages with the union and then sharing its compensation information with other hospitals in an effort to ensure that those other hospitals do not offer higher wages than Ellis.

(Tr. at 17-19, 21-25.) We concur with and adopt Judge McAvoy's well-reasoned analysis, which applies equally to UCH's motion.

UCH has cited no case law in support of its motion that is directly on point, and the rationale for the nonstatutory labor exemption does not apply to the instant factual situation. Accordingly, UCH's motion for summary judgment will be denied.

## **CONCLUSION**

The motion of defendant University of Chicago Hospitals for summary judgment is denied.

DATE:     March 28, 2007

ENTER:    _____ *(signed: John F. Grady)*

John F. Grady, United States District Judge